Jeffrey G. Bradford, OSB No. 133080
E-mail: jeff.bradford@tonkon.com
TONKON TORP LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Telephone: (503) 802-5724

Patrice S. Ruane (admitted *pro hac vice*)
E-mail: pruane@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME WARRANTY OF AMERICA, INC.,<br><br>Defendant. | Case No. 6:25-cv-01331-AA<br><br><br>**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

**Page**

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTION TO DISMISS ................................................................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT FACTS ............................................................................................ 6

III.   APPLICABLE LEGAL STANDARDS ............................................................. 8

     A.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim .................................... 8

     B.    Fed. R. Civ. P. 12(f) and 23: Striking Facially Uncertifiable Class
          Allegations................................................................................................. 8

IV.   ARGUMENT ....................................................................................................... 9

     A.    The Entire Complaint Should Be Dismissed On its Face Under Rule
          12(b)(6) Because Plaintiff Fail to Plausibly Allege a Theory of TCPA
          Liability. ..................................................................................................... 9

     B.    Alternatively, the Court Should Strike Plaintiff's Improper Class
          Allegations................................................................................................. 22

V.    CONCLUSION .................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ............................................................13, 18, 21

*Abante Rooter & Plumbing v. Farmers Grp., Inc*.,
  2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ....................................................................12, 18

*Alan v. BrandRep, Inc.*,
  2016 WL 10988679 (C.D. Cal. Nov. 28, 2016) ...................................................................28

*Alvarado v. Wal-Mart Assocs., Inc.*,
  2020 WL 6532868 (C.D. Cal. Oct. 22, 2020) .....................................................................11

*Am. Bank v. City of Menasha*,
  627 F.3d 261 (7th Cir. 2010) ................................................................................................4

*Antonio v. Saxon Mortg. Servs., Inc.*,
  2012 WL 13426614 (C.D. Cal. Sept. 7, 2012) ....................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................8

*Babare v. Sigue Corp.*,
  2020 WL 8617424 (W.D. Wash. Sep. 30, 2020) ..................................................................4

*Bank v. Alleviate Tax, LLC*,
  2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ....................................................................18

*Bank v. Philips Elecs. N. Am. Corp.*,
  2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) ....................................................................17

*Bank v. Vivint Solar, Inc.*,
  2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ....................................................................18

*Barnes v. SunPower Corp.*,
  2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ..............................................................14, 18

*Baxter v. Intelius, Inc.*,
  2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) .....................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................8

*Bell v. Hawx Servs., LLC*,
  2025 WL 2533371 (E.D. Cal. Sept. 3, 2025) .....................................................................21

*Belleville v. Fla. Ins. Servs., Inc.*,
  2024 WL 2342337 (S.D. Fla. May 23, 2024) ................................................................14, 15

*Bennett v. Celtic Ins. Co.*,
  2022 WL 865837 (N.D. Ill. Mar. 23, 2022) .......................................................................15

# TABLE OF AUTHORITIES

**Page**

*Brown v. Nano Hearing Tech OPCP,*
    *LLC*, 2024 WL 3367536 (S.D. Cal. July 9, 2024) ........................................................14, 17

*Brownlee v. Allstate Ins. Co.*,
    2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) .........................................................................13

*Chennette v. Porch.com, Inc.*,
    50 F.4th 1217 (9th Cir. 2022) ...............................................................................................26

*Childress v. Liberty Mut. Ins. Co.*,
    2018 WL 4684209 (D.N.M. Sept. 28, 2018) ........................................................................13

*Dixon v. Monterey Fin. Servs., Inc.*,
    2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ..................................................................9, 23

*Dobronski v. Russo*,
    2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)...........................................................14, 17

*Doyle v. GoHealth, LLC*,
    2023 WL 3984951 (D.N.J. Mar. 30, 2023)........................................................................17, 18

*Eggleston v. Reward Zone USA LLC*,
    2022 WL 886094 (C.D. Cal. Jan. 28, 2022) .........................................................................21

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ..................................................................................................8

*Fabricant v. Elavon, Inc.*,
    2020 WL 11884505 (C.D. Cal. Aug. 25, 2020)...............................................................19, 20

*Flores v. City of Calif. City*,
    2019 WL 1934016 (E.D. Cal. May 1, 2019) .........................................................................28

*Frank v. Cannabis & Glass, LLC*,
    2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .....................................................................14

*Garcia v. Anane Enter., LLC*,
    2025 WL 894616 (E.D. Cal. Mar. 24, 2025) ...................................................................10, 11

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).........................................................................................................22, 25

*Gillam v. Reliance First Cap., LLC*,
    2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)..................................................................20, 21

*Greene v. Select Funding, LLC*,
    2021 WL 4926495 (C.D. Cal. Feb. 5, 2021).........................................................................20

*Hale v. Teledoc Health, Inc.*,
    2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) ......................................................................19

*Hamilton v. El Moussa*,
    2020 WL 2614625 (C.D. Cal. Feb. 10, 2020).......................................................................20

# TABLE OF AUTHORITIES

**Page**

*Hamilton v. El-Moussa*,
   2020 WL 8993127 (C.D. Cal. Apr. 30, 2020) .........................................................................13

*Hanni v. Am. Airlines, Inc.*,
   2010 WL 289297 (N.D. Cal. Jan. 15, 2010) .........................................................................23

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .........................................................................................24, 25

*In re Rules & Regs. Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015) .............................................................................................4, 16

*Johnson v. Air Prods. & Chems., Inc.*,
   2023 WL 2663279 (C.D. Cal. Jan. 26, 2023) ...................................................................10, 11

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) .........................................................................................19

*Kamar v. Radioshack Corp.*,
   375 F.App'x 734 (9th Cir. 2010) .....................................................................................23

*Katz v. CrossCountry Mortg., LLC*,
   2022 WL 16950481 (N.D. Ohio Nov. 15, 2022) ...................................................................21

*Koos v. First Nat. Bank of Peoria*,
   496 F.2d 1162 (7th Cir. 1974) .......................................................................................25

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) ................................................................................19

*Langan v. United Svcs. Auto. Assoc.*,
   69 F.Supp.3d 965 (N.D. Cal. 2014) ...................................................................................9

*Lith v. Iheartmedia + Ent., Inc.*,
   2016 WL 4000356, at *5 (E.D. Cal. July 25, 2016) ...............................................................9

*Matthews v. Senior Life Ins. Co.*,
   2025 WL 1181789 (E.D. Va. Apr. 22, 2025) .......................................................................19

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
   873 F.3d 1045 (9th Cir. 2017) .......................................................................................19

*McPhatter v. M. Callahan & Assocs., LLC*,
   2013 WL 3981106 (E.D.N.Y. Aug. 2, 2013).........................................................................7

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)........................................................13, 15, 19

*Melito v. Am. Eagle Outfitters, Inc.*,
   2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015).......................................................................16

*Metzler v. Pure Energy USA LLC*,
   2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)..........................................................................13

# TABLE OF AUTHORITIES

**Page**

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ...............................................................7

*Murray v. Choice Energy, LLC*,
  2015 WL 4204398 (S.D. Ohio July 10, 2015)..........................................15

*Naiman v. Freedom Forever, LLC*,
  2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) .......................................20

*Naiman v. TranzVia LLC*,
  2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)..........................................20

*Nelums v. Mandu Wellness, LLC*,
  2023 WL 5607594 (D.N.M. Aug. 30, 2023) ..........................................12

*nexTUNE, Inc. v. McKinney*,
  2013 WL 2403243 (W.D. Wash. May 31, 2013)........................................8

*Nichols v. eHealthInsurance Serv., Inc*,
  2025 WL 689721 (N.D. Cal. Mar. 3, 2025)................................9, 23, 24

*Pascal v. Agentra, LLC*,
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .......................................12

*Pepka v. Kohl's Dep't Stores, Inc.*,
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ...................................9, 23

*Platte River Ins. Co. v. P & E Automation, Inc.*,
  2013 WL 12123688 (C.D. Cal. June 19, 2013) ......................................7

*Rearden LLC v. Rearden Commerce, Inc.*,
  597 F. Supp. 2d 1006 (N.D. Cal. 2009), *vacated on other grounds by* 683 F.3d 1190
  (9th Cir. 2012)....................................................................................7

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .................................15, 18, 19, 21

*Rogers v. Postmates Inc.*,
  2020 WL 3869191 (N.D. Cal. July 9, 2020).........................................12

*Salaiz v. eHealthInsurance Servs., Inc.*,
  2023 WL 2622138 (N.D. Cal. Mar. 22, 2023)........................................23

*Saunders v. NCO Fin. Sys., Inc.*,
  910 F. Supp. 2d 464 (E.D.N.Y. 2012) ...................................................5

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985)..........................................................25

*Scruggs v. CHW Grp., Inc.*,
  2020 WL 9348208 (E.D. Va. Nov. 12, 2020).........................................19

# TABLE OF AUTHORITIES

**Page**

*Sheski v. Shopify (USA) Inc.*,
   2020 WL 2474421 (N.D. Cal. May 13, 2020) ........................................................................13

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ...............................................................................................7

*Smith v. Direct Bldg. Supplies, LLC*,
   2021 WL 4623275 (E.D. Pa. Oct. 7, 2021).........................................................................18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...............................................................................................8

*Stoops v. Wells Fargo Bank, N.A.*,
   197 F.Supp.3d 782 (W.D. Pa. 2016)............................................................................26, 28

*Taylor v. Penske Logistics, LLC*,
   2021 WL 4288525 (C.D. Cal. Sept. 21, 2021) ...................................................................11

*Thomas v. Taco Bell Corp.*,
   582 F.App'x 678 (9th Cir. 2014) .....................................................................................12, 13

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..............................................................................22

*Tomaszewski v. Circle K Stores Inc.*,
   2021 WL 2661190 (D. Ariz. Jan. 12, 2021) .......................................................................23

*Towantic Energy, L.L.C. v. Gen. Elec. Co.*,
   2004 WL 1737254 (N.D. Cal. Aug. 2, 2004) ........................................................................7

*Webb v. Rejoice Delivers LLC*,
   2025 WL 974996 (N.D. Cal. Apr. 1, 2025) ...................................................................10, 11

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
   2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) .....................................................................21

*Whittlestone, Inc. v. Handi–Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ...........................................................................................9, 22

*Wick v. Twilio Inc.*,
   2017 WL 2964855 (W.D. Wash. July 12, 2017) ................................................................16

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...............................................................................................8

*Wilson v. MEDVIDI Inc.*,
   2025 WL 2856295 (N.D. Cal. Oct. 7, 2025).....................................................................3, 17

*Woodard v. Health Ins. All.*,
   2024 WL 942629 (N.D. Ill. Mar. 5, 2024)..........................................................................14

*Yagman v. Allianz Ins.*,
   2015 WL 5553460 (C.D. Cal. May 11, 2015) ......................................................................9

# TABLE OF AUTHORITIES

**Page**

*Zamora v. Penske Truck Leasing Co., L.P.*,
   2021 WL 809403 (C.D. Cal. Mar. 3, 2021)..........................................................................11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...............................................................................................7

## STATUTES

47 U.S.C. § 227(b)(1)(A)(iii)....................................................................................................24

47 U.S.C. §§ 227(b)(3) ..............................................................................................................4

47 U.S.C. § 227(c)(5)....................................................................................................4, 20, 24

47 U.S.C. §§ 227(b)(3) and (c)(5).............................................................................................6

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................................. passim

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................. passim

Fed. R. Civ. P. 23(a)(1)............................................................................................................27

Fed. R. Civ. P. 23(a)(3)............................................................................................................24

Fed. R. Civ. P.  23(a)(2)...........................................................................................................25

Fed. R. Civ. P. 23(a)(4)............................................................................................................24

Fed. R. Civ. P. 23(d)(1)(D).......................................................................................................22

Fed. R. Evid. 201(c)(2)...............................................................................................................7

LR 5-9(c).....................................................................................................................................3

## LR 7-1 CERTIFICATION

On October 21, 2025, Defendant's counsel conferred with Plaintiff's counsel (Andrew Perrong) via phone, and discussed all the disputed issues asserted in this Motion, but counsel were unable to reach a resolution, thus necessitating this Motion.

## MOTION TO DISMISS

Defendant Home Warranty of America, Inc. ("HWA") respectfully moves this Court (i) to dismiss the putative class action Complaint (*see* ECF No. 1) filed in the above-captioned matter by Plaintiff Chet Michael Wilson ("Plaintiff"), in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6); or (ii) alternatively, to strike Plaintiff's facially uncertifiable class allegations pursuant to Fed. R. Civ. P. 12(f) and/or 23. In support of this Motion, HWA respectfully submits and relies upon the incorporated Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case concerns alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). But this is not a "typical" TCPA case. It involves calls allegedly made to a phone number comprised of the Oregon area code (541) followed by all identical sequential digits, along the lines of 555-5555.[1] Though often fake, businesses use similar sequential numbers because they are easy to remember and sound good in a jingle. Billboard and radio ads for attorneys, for example, are replete with such numbers (indeed, typing "222-2222" into Google brings up dozens of personal injury attorneys). Beyond this, such numbers are often used as exemplar numbers on a variety of business and government websites

---

[1] "555-5555" is a well-known "dummy" number, commonly used in movies and on television shows because it does not belong to anyone; the subject phone number at issue here is similar. The complete at-issue number is not included here for confidentiality reasons, in accordance with local electronic filing requirements, but will be provided to the Court on request.

(including *this* Court, as discussed below) to show people how to fill out forms and documents. Individual consumers, on the other hand, do not want and are not typically assigned such odd phone numbers. This is for obvious reasons, as they could be inundated with calls whenever someone else uses their seemingly "dummy" or facially business-looking phone number, not realizing it is someone's personal number and could result in erroneous calls.  The only reason for a consumer to intentionally have such a number is to invite such calls.

Here, a Google search shows that many Oregon institutions use the same at-issue number as a sample/placeholder number when they provide examples of how to fill out applications, submit resumes, or even submit forms or filings to courts.[2] For example, it is (1) the contact number for "Betsy Beavers" on an exemplar Industry Resume provided by the University of Oregon; (2) the contact number for "Barbara Biologist" and "Steve Supervisor" within "Effective Resumes for Fisheries & Wildlife Students" published by Oregon State University; (3) the contact number for "Jane Doe" on an example Dental Assisting Program Application provided by Lane Community College; and (4) the contact number for "John Student" on an example USCIS Form I-765 provided by the University of Oregon. *See* Declaration of Patrice S. Ruane ("Ruane Decl."), attached hereto, at ¶¶ 6–9 and Exhibits ("Ex.") A–D thereto. Moreover, **the District of Oregon** even uses it as an exemplar number in the Local Rules of Civil Procedure, as an example of how "John Q. Attorney" should submit a proposed form of order or judgment. *See* LR 5-9(c). *See* Ruane Decl. ¶ 10 and Ex. E thereto.

But it is not just used as a seemingly "fake" number for illustrative purposes like this. It appears all over the internet as a contact number for a wide variety of ostensibly real businesses, including, *inter alia*, (1) on the Atlas Storage Albany website in Albany, Oregon; (2) on

---

[2] This Court may take judicial notice of the fact that the number is published on the internet (and other public records discussed herein) for Rule 12(b)(6) purposes. *See infra* footnote 6.

www.realtor.com as the number for a real estate agent with Keller Williams/Eugene; and (3) on the "Watchdog Florence" Facebook page. *See id.* ¶¶ 11–13 and Ex. F–H thereto. Even ***Plaintiff himself*** listed it as a contact number for him as the "Director of Marketing" for LeavenNoTrace.org on a post on that entity's Facebook page on October 17, 2020 (i.e., for business purposes). *Id.* ¶ 14 and Ex. I.

Beyond his unquestionably odd phone number, this case also falls far outside the "norm" by virtue of Plaintiff's *modus operandi*. In less than one year, Plaintiff has filed at least ***64 TCPA lawsuits*** in federal courts, all of which appear to have been styled as putative class actions, including 19 in the District of Oregon alone. *See* Ruane Decl. ¶¶ 16–19 and Ex. K. That is an average of one new federal TCPA class action lawsuit every ***five*** days, which is staggering and perhaps makes Plaintiff one of the most prolific serial TCPA litigants in recent history. Of these cases, many assert substantially similar—and, in many instances, nearly identical—boilerplate and wholly conclusory allegations as pled here in support of his claims, all based on calls to the same phone number splashed across the internet that he claims is a "residential" line here. None of his cases have been certified as a class and many seem to have resolved early at the pleadings stage, mostly apparently due to settlements but some through motion practice. Perhaps worse, beyond the one Facebook reference above, records suggest that his alleged phone number here, which forms the basis of all his claims, is used by a variety of <u>real</u> businesses, but not Plaintiff. *Id.* ¶ 15 and Ex. J.

In any event, while Plaintiff may argue in response to this motion that the TCPA is a remedial statute designed to protect consumer from harassing telemarketers, the TCPA does not give plaintiffs armed with nothing but bald conclusions a free pass to discovery, as Plaintiff should well know. *See, e.g.*, *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing TCPA case brought by the same Plaintiff, when "[t]he complaint does not plead

sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications"). And nothing about Plaintiff and his seemingly-fake alleged phone number makes him a suitable class representative or makes this case a good candidate for class treatment.

Rather, federal judges across the country have recognized that, at the pleadings stage in putative TCPA class actions, they must dutifully exercise their gatekeeping role under the Federal Rules to ensure that claims and allegations meet the plausibility threshold and are worthy of class treatment at the pleadings stage before subjecting defendants to the rigors and high costs of discovery, notwithstanding the TCPA's remedial nature. This is for good reason. As the FCC has commented,  the TCPA unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" in this country since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).[3] This is an understatement. In fact, dozens of new TCPA class actions are filed weekly (even daily) in federal courts in every Circuit, often by entrepreneurial serial litigants and their counsel and not by consumers using the TCPA for its intended purpose. Such appears true here, given how prolific a TCPA litigant Plaintiff has become in such a short time. But all this is really unsurprising, given the broad financial relief the TCPA affords plaintiffs and the ease with which even facially baseless claims can be brought and quickly settled for far beyond their value.[4] And

---

[3] *See also Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Am. Bank v. City of Menasha,* 627 F.3d 261, 266 (7th Cir. 2010) (plaintiffs can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit").

[4] Generally, plaintiffs may recover up to $500 in statutory damages per call, trebled for willful/knowing violations. *See* 47 U.S.C. §§ 227(b)(3) and (c)(5). This may seem small individually, but can be ruinous in a class action, hence why most TCPA cases are styled as class actions and settled for much more than a named plaintiff could receive at trial than if they proceeded individually.

while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from defendants through grossly expensive class litigation. *See Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). As such, federal courts have not hesitated to dismiss faulty TCPA complaints, built on a weak foundation of barren conclusions lacking in requisite factual support, under Rule 12 for not meeting federal pleadings standards. Plaintiff's Complaint should here suffer the same fate for several reasons:

**First**, the entire Complaint should be dismissed on its face under Rule 12(b)(6) because Plaintiff fails to state a plausible claim under the TCPA or facts supporting one. As an initial matter, Plaintiff pleads no plausible facts in support of his class allegations, which at the minimum warrants dismissing his class allegations outright under Rule 12(b)(6), as courts in this Circuit have found.  Moreover, it is well-settled that, to successfully plead *any* TCPA claim and avoid dismissal at the pleadings stage, all plaintiffs must first allege a viable theory of liability—*i.e.*, direct or vicarious liability. In this case, Plaintiff fails to plead sufficient non-conclusory facts supporting a plausible inference either that HWA: (i) itself, and not a third party, "physically" took any steps to place each of the subject calls him directly, as is required to plead direct TCPA liability; or (ii) was in a common law agency with any third party who did physically call him, as is required to plead vicarious TCPA liability. This defect alone is fatal to his <u>entire</u> Complaint under Rule 12(b)(6) per the weight of applicable authority on the TCPA cited herein. *See Wilson*, *supra*.

**Second**, Count II of the Complaint, which purports to bring a "Do Not Call" ("DNC")

claim under Section 227(c) of the TCPA,[5] should be dismissed in its entirety under Rule 12(b)(6) for the additional reason that Plaintiff fails to plead sufficient facts supporting other essential elements of such a claim. In this regard, Plaintiff omits non-conclusory facts supporting an inference that he received ***more than one call*** physically initiated "by or on behalf of the same entity" in a 12-month period, which is a necessary predicate to his DNC claim.

**Third**, while the entire Complaint is ripe for dismissal for the reasons outlined above, the class allegations (especially the class definitions) are also facially improper such that the proposed class is uncertifiable as pled for multiple reasons. Thus, if the Court does not dismiss the entire Complaint in whole or in party, the faulty class allegations should at least be stricken at the pleadings stage under Rules 12(f) and/or 23, before the parties waste time in discovery on them.

## II. RELEVANT FACTS

In pertinent part, Plaintiff asserts that he received two phone calls from HWA, both of which went to voicemail. ECF No. 1, ¶ 22. Of these, he alleges receipt of a call on July 1, 2025 from a number with a (402) area code (eastern Nebraska) that gave a callback number with a (201) area code (northeastern New Jersey) and mentioned only "*the* home warranty." *Id.* ¶ 24 (emphasis added). Importantly, however, Plaintiff admits that this call did not mention the name of the caller or the company, and offers no facts at all that would possibly connect this call with HWA. *See id.* Plaintiff then alleges receipt of a call on July 7, 2025, from a number with an (848) area code (central New Jersey); *i.e.*, an entirely different number than either number mentioned in the July 1 call. *Id.* ¶¶ 25–26. This time, Plaintiff alleges that the voicemail mentioned HWA by name. *Id.*

Plaintiff alleges that the sequential number at which he received these calls is "his personal residential telephone number," that he "does not use, and at no time has he used," the telephone

---

[5] Though not discussed below, HWA does not concede (and disputes) that Plaintiff has adequately alleged a prerecorded call claim under Section 227(b) of the TCPA in Count I.

number "for business or commercial purposes," and that he has been the subscriber of the number

"for at least five years." *Id.* ¶¶ 13–15. The Complaint is pleaded in such a way to suggest that he

has been the ***sole and exclusive user*** of the number for at least five years. *See id.* ¶¶ 13–19.

But publicly-available records, of which this Court may take judicial notice for present

purposes, tell a different story.[6] For starters, a simple Google search shows that Plaintiff listed the

number at issue (a sequential number with an Oregon area code) as his business contact

information as the Director of Marketing for LeavenNoTrace.org. *See* Ruane Decl. ¶ 14 and Ex. I.

Moreover, the number is published in conjunction with other seemingly operational businesses,

including a realtor, a watchdog group, and a storage facility. *Id.* ¶¶ 11–13 and Ex. F–H. In fact,

some reports on the number show that it is associated with ***at least 50 businesses***, but not Plaintiff

himself. *See id.* ¶ 15 and Ex. J.[7] It also shows up on this Court's website as an exemplar number.

*See id.* ¶ 10 and Ex. E. In other words, Plaintiff apparently has not been the sole and exclusive user

of the number, and some evidence suggests he might not even be the user at all. It is also unclear

how, or why, his purported "personal residential telephone number" that he has supposedly ***never***

---

[6] This Court may take judicial notice of the fact that the number is published on the internet in conjunction with a motion under Rule 12(b)(6). *See e.g., Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Indeed, courts routinely take judicial notice of publicly available business records from internet sources. *See Towantic Energy, L.L.C. v. Gen. Elec. Co.*, 2004 WL 1737254, at *1 n.1 (N.D. Cal. Aug. 2, 2004) (taking judicial notice of "facts set forth on Plaintiff's website"); *see also McPhatter v. M. Callahan & Assocs., LLC*, 2013 WL 3981106, at *1 (E.D.N.Y. Aug. 2, 2013), *report and rec. adopted*, 2013 WL 5209926 (Sept. 13, 2013) (taking judicial notice of party's number on the website for the Better Business Bureau); *Platte River Ins. Co. v. P & E Automation, Inc.*, 2013 WL 12123688, at *2 (C.D. Cal. June 19, 2013) ("Courts routinely take judicial notice of documents found on the internet.") (citing *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1013 n.3 (N.D. Cal. 2009), *vacated on other grounds by* 683 F.3d 1190 (9th Cir. 2012) (taking judicial notice of the contents of a webpage listing office locations)); *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *2 (C.D. Cal. Sept. 16, 2010) (taking judicial notice of information on business website).

[7] Oddly, another report shows that the number is not connected to anyone at all. *See id.* ¶ 15.

used for "business or commercial purposes" (according to him) has come to be linked publicly

with so many businesses, the vast majority of which do not appear to be linked to Plaintiff.

As demonstrated below, these allegations do not pass muster under federal pleadings

standards and therefore they are ripe for dismissal under Rule 12(b)(6).

## III. <u>APPLICABLE LEGAL STANDARDS</u>

### A. <u>Fed. R. Civ. P. 12(b)(6): Failure to State a Claim</u>

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim. When

reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set

forth in the complaint . . . as true and construed in the light most favorable to [p]laintiffs." *Epstein*

*v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). However, only well-pleaded facts are

given a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Naked allegations

without factual enhancements "stop[] short of the line between possibility and plausibility of

entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (internal quotations

omitted). A "formulaic recitation of the elements" of a claim is likewise insufficient, *Iqbal*, 556

U.S. at 678, and conclusory allegations that "simply recite the elements of a cause of action"

without supplying underlying facts to support those elements are not "entitled to the presumption

of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In short, under Rule 12(b)(6), this

Court need <u>not</u> accept as true any "allegations that are merely conclusory, unwarranted deductions

of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th

Cir. 2012); *see also nexTUNE, Inc. v. McKinney*, 2013 WL 2403243, at *4 (W.D. Wash. May 31,

2013) ("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to

dismiss under 12(b)(6).") (citation omitted).

### B. <u>Fed. R. Civ. P. 12(f) and 23: Striking Facially Uncertifiable Class Allegations</u>

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). Courts in the Ninth Circuit have widely recognized that class allegations may be properly stricken at the pleadings stage pursuant to Rules 12(f) and 23 where, as here, the requirements of Rule 23 are not met on the face of the Complaint. *See, e.g., Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (striking proposed TCPA class allegations at the pleadings stage); *Lith v. Iheartmedia + Ent., Inc.*, 2016 WL 4000356, at *5 (E.D. Cal. July 25, 2016) (striking fail-safe class claims at the pleading stage); *Nichols v. eHealthInsurance Serv., Inc*, 2025 WL 689721, at *4 (N.D. Cal. Mar. 3, 2025) (same); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1–5 (C.D. Cal. Dec. 21, 2016) (striking class allegations in a TCPA case, in part, for being "an impermissible fail-safe class"). Courts strike such faulty allegations at an early stage because permitting a facially uncertifiable proposed class to proceed to discovery would place an undue burden and expense upon the parties and the Court. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (striking from pleadings where allowing untenable class claims to proceed "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)); *Langan v. United Svcs. Auto. Assoc.*, 69 F.Supp.3d 965, 988-89 (N.D. Cal. 2014) (striking class allegations where "discovery on the class claims would not shed any additional light" on whether plaintiff would meet Rule 23 requirements).

## IV. <u>ARGUMENT</u>

### A.  <u>The Entire Complaint Should Be Dismissed On its Face Under Rule 12(b)(6) Because Plaintiff Fail to Plausibly Allege a Theory of TCPA Liability.</u>

The entire Complaint is ripe for dismissal on its face under Rule 12(b)(6) for several reasons.

### 1.  Plaintiff's Class Allegations Should be Dismissed Under Rule 12(b)(6).

Like Plaintiff's threadbare allegations that fail to state a plausible individual TCPA claim, as discussed below, his unsupported class allegations can be quickly dispensed with at the outset

under Rule 12(b)(6), given the odd circumstances here. *See, e.g.*, *Garcia v. Anane Enter., LLC*, 2025 WL 894616, at \*14 (E.D. Cal. Mar. 24, 2025) (class allegations can be dismissed under 12(b)(6) where the complaint lacks factual allegations and reasonable inferences establishing the plausibility of the class allegations). *See also Webb v. Rejoice Delivers LLC*, 2025 WL 974996, at \*2 (N.D. Cal. Apr. 1, 2025) (same); *Johnson v. Air Prods. & Chems., Inc.*, 2023 WL 2663279, at \*5 (C.D. Cal. Jan. 26, 2023) (same).

In this regard, Plaintiff's Complaint baldly alleges, without any factual support, *inter alia*, that (i) "[t]he subject calls were intended for someone other than, and unknown to, Plaintiff"; (ii) "[u]pon information and belief, the members of the proposed class are so numerous that joinder is impracticable"; and (iii) his "claims are typical of the claims of the members of the classes." ECF No. 1, ¶¶ 36, 46, 49. *See also id.* ¶¶ 50–54 (containing similarly speculative allegations relating to potential class members). However, Plaintiff does not provide any facts supporting a reasonable inference that HWA could have treated any other person in the same manner as Plaintiff allegedly was treated here, such that a class could exist. This is because such facts cannot be plausibly pled.

**<u>First</u>**, as discussed at pp. 3–5, 9, *supra*, his phone number is extremely odd, is splashed across the internet, and is apparently used both as a dummy number and as contact information for a host of other businesses. Anyone could have legitimately provided this odd number for the purpose of obtaining information about HWA's services, for two opposite reasons. On the one hand, perhaps someone thought it was a fake number that did not belong to anyone, and therefore provided it because they did not want to receive calls (maybe they wanted to receive emails but not calls, or just typed random digits on their keyboard, etc.). On the other, perhaps any one of the many businesses apparently associated with the number provided it because they wanted to receive calls. Even Plaintiff acknowledges that it could have been provided by anyone, since he alleges the subject calls

were intended for someone else. *See* ECF No. 1, ¶ 22. In any event, these claims are not typical of those that could be brought by anyone else.

**Second**, as discussed in footnote 12, *infra*, it is impossible to believe that a class comprised of people with similar claims to Plaintiff, with such an odd number, would be "so numerous that joinder is impracticable." The number of people with repeated-digit phone numbers who could allege receiving calls by or on behalf of HWA must be close to one, if any.

At bottom, it would require an enormous leap of logic to assume anyone else, who might have a similar number, received any calls in the same manner, and Plaintiff has offered no factual support for these conclusions. Therefore, Plaintiff's class allegations should be dismissed under Rule 12(b)(6). *See, e.g.*, *Garcia*, *Webb*, *Johnson*, *supra*; *see also Taylor v. Penske Logistics, LLC*, 2021 WL 4288525, at *4 (C.D. Cal. Sept. 21, 2021) ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without any additional facts, that [the defendant] treated other employees in a similar fashion. This 'logical disconnect' renders the class claim subject to dismissal."); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) ("Plaintiffs' arguments suffer from a basic logical disconnect. Whether Plaintiffs adequately allege claims on their own behalf is beside the point. Plaintiffs do not assert any factual support for their class allegations. Rather, Plaintiffs merely allege that their claims are also brought on behalf of the Class. Without any factual support, . . . the Court finds such leaps implausible. . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter.") (citation omitted); *Alvarado v. Wal-Mart Assocs., Inc.*, 2020 WL 6532868, at *3 (C.D. Cal. Oct. 22, 2020) ("Plaintiff cannot extrapolate from her singular experience that Defendants have a pattern and practice of committing similar violations[.]") (simplified); *Antonio v. Saxon Mortg. Servs., Inc*., 2012 WL 13426614, at *3 (C.D. Cal. Sept. 7, 2012) ("Plaintiffs clearly do not know if the proposed class

actually exists. Nor have Plaintiffs alleged any facts that would give them, or the Court, any reason to believe (or even hope) that such a class exists. The federal fact-pleading standard, though lenient, does not permit a plaintiff to proceed with claims based on pure speculation. Plaintiffs cannot make baseless assumptions in their complaint in the hopes that something will 'stick' during discovery. Plaintiffs' argument here amounts to a request for leave to pursue class claims based on guesses lacking factual support in the hopes that a class will somehow materialize at a later date.").

## 2. Plaintiff Fails to Plausibly Allege that HWA Can Be Directly or Vicariously Liable Under the TCPA for the Calls.

The Complaint also fails to plausibly allege a theory of liability under the TCPA against HWA, which alone is fatal and warrants its <u>complete</u> dismissal. Courts in this Circuit, and throughout the country, have held that there are "two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp*., 582 F.App'x 678, 679 (9th Cir. 2014)). Thus, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)).

Failure to plausibly allege either liability theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u>, regardless of whether the plaintiff also pled facts supporting other essential elements of that claim. *See Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). In this case, Plaintiff fails to adequately allege either liability theory.

It is well-established that the TCPA only allows for a direct liability theory to be advanced against the person or entity that "initiated" the call, meaning the person who ***physically*** placed the complained of calls. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *See also Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing TCPA claim; plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for each call" at issue); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing; TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal); *Wilson*, 2025 WL 2856295, at *4 (dismissing on this basis where, as here, Plaintiff's complaint did "not plead sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications").

Accordingly, courts in this Circuit and elsewhere have regularly dismissed direct TCPA liability claims at the pleadings stage under Rule 12(b)(6) where the complaint lacks sufficient non-conclusory factual allegations indicating that the defendant actually "ma[d]e" the calls at issue by "tak[ing] the steps necessary to physically place" a call. *Sheski*, 2020 WL 2474421, at *2–4 (quoting *In re Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26). *Accord Hamilton v. El-Moussa*, 2020 WL 8993127, at *2 (C.D. Cal. Apr. 30, 2020) (dismissing on this basis under Rule 12(b)(6), citing *Thomas*).[8] *See also Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that

---

[8] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and dismissing conclusory direct TCPA liability claims (including those above and many others) have <u>uniformly</u> held that "make" or "initiate" in this context means to "physically" make the calls at issue. *See, e.g.*, *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018). This is a clear majority rule, applied nationwide.

defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue").

It is also well-settled that allegations of direct TCPA liability must be supported by more than just barebones legal conclusions and speculation that the defendant "made" or "initiated" the calls at issue to avoid dismissal under Rule 12(b)(6). *See Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Barnes v. SunPower Corp.*, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis where complaint failed to plausibly allege defendant physically made the subject calls directly to plaintiff); *Belleville v. Fla. Ins. Servs., Inc.*, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part*, 2024 WL 2794108 (May 31, 2024) (recommending dismissal where the plaintiff merely alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff did not plead supporting facts suggesting defendant itself physically placed each at-issue call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (holding a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead a theory of TCPA liability). In other words, concluding the "defendant and/or an agent called me" is not enough to plead direct liability; more factual enhancement is needed.

Accordingly, myriad courts in and beyond this Circuit have recognized that even a call allegedly offering the defendant's products, identifying the defendant by name, and/or originating

"from" someone associated with the defendant in some way does not, standing alone, allow for a plausible inference that the defendant *itself* (and not a third party) physically placed any call for direct TCPA liability purposes. *See, e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (finding no direct liability in TCPA case, even though at-issue text allegedly identified defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1–4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website on the call); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where complaint alleged one defendant "physically" placed the subject calls, noting the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). In sum, these well-reasoned authorities (and many others) show that the alleged content of the complained-of communications, standing alone, is not dispositive of (and thus insufficient to plead) direct TCPA liability. This Court should reach the same sound conclusion here.

Indeed, this accepted approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6), applied by federal courts for decades, recognizes that companies often hire third parties to handle their outbound communications. *See, e.g.*, *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). For example, a company could "cause" a phone call "to be placed" (or

"initiated" or "delivered") by a third-party vendor, like Plaintiff (insufficiently) alleges here. *See, e.g.*, ECF No. 1, ¶¶ 43, 50, 79. Such a communication would naturally identify the defendant or its products by name (which is the point of hiring a vendor) and thus may have originated "from" the defendant in a technical sense. But that call was not physically placed by the ***defendant itself directly*** to the plaintiff, which is what matters on this point. As a matter of law, there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach; an indirect connection to a call by a third party will not do. 30 FCC Rcd. at 7980. Put differently, "[m]erely offering a good or service for sale does not mean that a retailer [itself physically] initiates the marketing calls for that product" for direct TCPA liability and thus is insufficient to plead such a theory alone. *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (citations omitted).[9]

Applying the foregoing firmly-rooted legal principles here, it is readily apparent that Plaintiff fails to sufficiently allege a direct TCPA liability theory against HWA, further warranting dismissal of his entire Complaint. Indeed, as noted above, Plaintiff merely alleges that <u>either</u> HWA "initiated" <u>or</u> that it "caused" others (*i.e.*, third parties) to initiate, place or deliver the subject calls, *see* ECF No. 1, ¶ 79, but courts have held this is insufficient to plausibly allege a TCPA liability theory. *See, e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing; "Plaintiffs' conclusory assertions that [the defendant] ***sent or caused the text message to be sent*** is simply a legal conclusion devoid of further factual enhancement.") (emphasis added).

Plaintiff himself should be well aware of the requirements to plead a direct liability theory in

---

[9] These decisions reflect a proper application of federal pleadings standards in the TCPA context. Indeed, if all it took for a plaintiff to sufficiently allege a TCPA liability theory was for the call to identify the defendant's name or products, there would be no need to differentiate between direct and vicarious liability theories, and no TCPA complaint would ever be dismissed under Rule 12(b)(6) on these grounds. That is <u>not</u> the law, as the many cases cited herein all show.

a TCPA case, as a motion to dismiss in one of his recent cases was granted **on these exact grounds**:

> The complaint does not plead sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications. Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA," the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such "unadorned labels" are insufficient as a matter of law to allege any agency relationship.

*Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (internal record citations omitted). Indeed, this same "either/or" approach to pleading TCPA liability theories that Plaintiff employs here has been squarely rejected by countless courts in and beyond this Circuit. *See, e.g.*, *Brown*, 2024 WL 3367536, at *3 (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent"); *Dobronski*, 2024 WL 4363118, at *5 (holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability liability); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing and holding allegations that the alleged calls were "from Defendant, its employees and/or agents" insufficient for directly liability, without more); *Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (holding plaintiff's allegations calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability).

At best, Plaintiff vaguely alleges only that the voicemail left on July 7, 2025 mentioned HWA's name, asking if the recipient "wanted to hear more" about HWA. *See* ECF No. 1, ¶¶ 25–26. This does not indicate that HWA itself physically placed that call, or the preceding July 1 call

which Plaintiff does not connect to HWA in any way with any facts. And it is just as plausible to infer a third party "delivered" the alleged voicemail messages, particularly because Plaintiff apparently did not answer the calls. As one district court aptly noted when dismissing a TCPA case on this basis under Rule 12(b)(6), however, "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024). And again, as the myriad well-reasoned authorities cited herein show, the content of an alleged call alone is insufficient to plead direct TCPA liability. *See, e.g.*, *Abante Rooter*, 2018 WL 288055, at *4 (dismissing on this basis; allegations that the caller stated they were calling "on behalf of" the defendant and identified defendant by name insufficient); *Barnes*, 2023 WL 2592371, at *1–3 (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who identified herself as working for" defendant).

At bottom, Plaintiff's Complaint is perhaps more notable for the facts it <u>omits</u> in this regard. For example, Plaintiff does <u>not</u> plausibly allege, or even state in conclusory fashion, *inter alia*, that: (i) the phone numbers used by the callers to place the calls are owned or used by HWA, (ii) anyone ever identified themselves as a HWA *employee*, (iii) his Caller ID identified HWA by name, or (iv) he attempted to call the numbers used back and reached HWA directly. Such facts, if properly pled, might support a direct TCPA liability theory, as other courts have found. *See, e.g.*, *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Assurance IQ*, 2023 WL 2646468, at *5; *Aaronson*, 2019 WL 8953349, at *4; *Doyle*, 2023 WL 3984951, at *4–6; *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing TCPA claims on this basis where complaint lacked such contextual facts). In short, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is

required] to provide greater detail" for his claims. *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing on this basis). The omission of such critical (indeed necessary) detail here dooms the entire Complaint to dismissal on direct TCPA liability grounds.

Lastly, despite including legal buzzwords vaguely suggestive of possible third party involvement as noted above (*i.e.*, that HWA possibly "cause[d]" someone else to initiate, place or deliver the subject calls), Plaintiff does not assert any factual allegations in the Complaint remotely supporting an inference that HWA was in a common law agency relationship with any third party that called him.[10] Nor does he allege HWA had specific "control" over the "manner and means" of any third-party caller's telemarketing campaign, which is the touchstone of vicarious liability in a TCPA case and must also be adequately pled in all cases, even in conclusory fashion. *See, e.g.*, *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449-50 (9th Cir. 2018); *Assurance IQ*, 2023 WL 2646468, at *6 (citing *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020)); *Meeks*, 2018 WL 1524067, at *6. That HWA's name or its products were allegedly mentioned by <u>one</u> caller does not support an inference of such control and thus plead vicarious liability, either. *See, e.g.*, *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing on vicarious TCPA liability grounds, holding: "[T]he inclusion of [defendant's] services in [the telemarketer's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the telemarketer] called plaintiffs at [the defendant's direction or subject to [its] control"). Consequently,

---

[10] Of course, "[t]hough 'the precise details of the agency relationship need not be pleaded to survive [dismissal on this basis], sufficient facts must be offered [in the complaint] to support a reasonable inference that an agency relationship existed'" to demonstrate vicarious TCPA liability. *Meeks*, 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d 1292, 1301 (D. Nev. 2014)). And to adequately plead an agency relationship, Plaintiff must plead some plausible facts showing that some third party had "authority to act on behalf of" HWA, and that HWA had "a right to control the actions of the agent." *Id.* at *6 (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017)). No such facts were pled here.

Plaintiff's Complaint should also be dismissed on vicarious TCPA liability grounds, as well. *See, e.g.*, *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (rejecting unsupported "agency" allegations as "wholly conclusory" and dismissing based thereon under Rule 12(b)(6)); *Fabricant*, 2020 WL 11884505, at *4 (dismissing where agency "allegations [we]re not supported by facts that show[ed] 'how [the defendant] did those things or how it knew those things'") (quoting *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017)); *Hamilton v. El Moussa*, 2020 WL 2614625, at *2–3 (C.D. Cal. Feb. 10, 2020)  (dismissing in part on this basis where the plaintiff's agency allegations were merely conclusory).

### 3.   Count II: Plaintiff Fails to Plausibly Allege That the Calls Received Violated the Do-Not-Call Provision of the TCPA.

Count II, alleging a violation of the Do-Not-Call provision of the TCPA, fails for the additional reason that Plaintiff has not alleged facts showing that his claim meets the bare statutory requirements for such a claim. Section 227(c)(5) of the TCPA allows consumers to bring claims only where they have "received ***more than one*** telephone [solicitation] call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5) (emphasis added); *see also* 47 C.F.R. § 64.1200(c)(2). Accordingly, courts routinely dismiss claims where, as here, a plaintiff alleges receiving ***only one such call*** by or on behalf of a defendant in a 12-month period. *See*, *e.g.*, *Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing where the plaintiff "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation" and the plaintiff "[had] not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."); *Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (ruling similarly).

In this case, even reading the Complaint in the light most favorable to Plaintiff, there are no plausible allegations, aside from Plaintiff's bald conclusions, that the July 1 call was made by

or on behalf of the same entity (HWA), as is required for a DNC claim. Plaintiff's own Complaint shows that the call did not mention HWA in any way, and it did not come from (or request a call back at) the same phone number used in the July 7 call. In short, there is nothing about this alleged call connecting it to HWA, even assuming *arguendo* it was a "telephone solicitation."

This is in contrast to the alleged July 7 call, which Plaintiff alleges **did** mention HWA—though, notably, there *is* nothing in the message offering Plaintiff any goods or services either (at most, it asks if he wanted to "hear more" about HWA), which would be required as a threshold matter for a call to qualify as a "telephone solicitation."[11] *See* ECF No. 1, ¶¶ 24–26. But, as discussed above, Plaintiff makes no attempt at all to connect the numbers used to place, or referenced in, either call with HWA; he does not, for example, allege that he looked at his caller ID and saw the name "HWA" associated with the number, that he called the number back and reached HWA directly, or even that he did an internet search for the number and found it linked to HWA. He merely concludes that "Defendant called Plaintiff." *Id.* at ¶ 24. That is not enough. Plaintiff's conclusion that HWA made the July 1 phone call is unsupported; therefore, it is not entitled to any presumption of truth and should be disregarded. *See, e.g.*, *Assurance IQ*, 2023 WL 2646468, at *5 (dismissing on this basis where complaint lacked such details about the alleged communications) (citing *Aaronson*).

In short, the possible receipt of one call mentioning HWA by name is insufficient to support

---

[11] *See* 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation"). Courts have frequently dismissed DNC claims under Rule 12(b)(6) where the plaintiff fails to plead sufficient actual facts, beyond bald conclusions or simply parroting the statute, supporting an inference that a call they received fits the statutory definition of a "telephone solicitation." *See, e.g., Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *3–4 (E.D. Cal. Sept. 3, 2025) (citing, *inter alia, Andersen, LLC*, 2024 WL 3762098, at *2; *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *6–7 (C.D. Cal. Jan. 28, 2022)); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, 2024 WL 4228149, at *3–4 (E.D. Pa. Sept. 17, 2024); *Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023).

a TCPA DNC claim, which per the statute requires *two* calls, which further dooms Count II.

**B.    Alternatively, the Court Should Strike Plaintiff's Improper Class Allegations.**

Alternatively, should Plaintiff's fatally-flawed claims survive dismissal despite the multiple well-supported dispositive grounds above (and they should not), the Court should nevertheless strike Plaintiff's faulty class allegations under Rules 12(f) and/or 23 because, among other reasons, (i) Plaintiff's proposed class definitions are impermissibly fail-safe, and (ii) his claims are not typical of any claim that could be brought by the class, and therefore he cannot adequately represent the class. With the proposed class definition properly stricken in its entirety, all remaining class-related allegations would be superfluous and therefore should also be stricken.

The function of a Rule 12(f) motion such as this is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc.*, 618 F.3d at 973. Regarding class certification, the Supreme Court has observed that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010); *see also* Fed. R. Civ. P. 23(d)(1)(D) (in a class action, a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). As applied in this case, this Court should strike Plaintiff's facially-uncertifiable class definitions and related allegations for at least the following reasons:

**1.    Plaintiff's Proposed Class Definitions Are Impermissibly "Fail Safe."**

Moreover, Plaintiff's proposed class definitions (*see* ECF No. 1, ¶ 43) are improperly pled

as "fail-safe." A class definition is impermissibly "fail-safe" where, as here, "a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). *See also Kamar v. Radioshack Corp.*, 375 F.App'x 734, 736 (9th Cir. 2010) (defining fail-safe classes).

Accordingly, courts in this Circuit routinely grant Rule 12(f) motions to strike proposed fail-safe class definitions in TCPA cases at the pleadings stage. *See*, *e.g.*, *Pepka*, 2016 WL 8919460, at *3 (striking fail-safe TCPA class definition where it would require the Court to engage in an improper merits determination to determine membership); *Dixon*, 2016 WL 4426908, at *2 (same); *Nichols*, 2025 WL 689721, at *4 (same); *Salaiz v. eHealthInsurance Servs., Inc.*, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023) (same); *Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190, at *2–3 (D. Ariz. Jan. 12, 2021) (same). These apply with full force in this case.

Here, as plead, Plaintiff's proposed classes are impermissibly fail-safe as pled because membership in the class depends on the merits of the members' underlying claims. The proposed classes are defined in pertinent part to include:

> **Pre-Recorded Call Class**: All persons throughout the United States (1) to whom Defendant placed or caused to be placed a call (2) directed to a number assigned to a cellular telephone service but not assigned to a person who is a customer of Defendant or in collections with Defendant (3) in connection with which Defendant used an artificial or prerecorded voice[.]

> **Do Not Call Registry Class**: All persons throughout the United States (1) who did not provide their telephone number to Defendant, (2) to whom Defendant delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Defendant's goods or services (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Defendant delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period[.]

ECF No. 1, ¶ 43. These proposed class definitions track the statutory language closely, if not almost perfectly. Indeed, the artificial/prerecorded voice provision of the TCPA prohibits making "any

call (other than a call made for emergency purposes made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellular number. *See* 47 U.S.C. § 227(b)(1)(A)(iii). And the DNC provision prohibits making "more than one" "telephone solicitation" "within any 12-month period by or on behalf of the same entity" to a "residential telephone subscriber who has registered his or her telephone number on the national [DNC] registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

To determine who is a member of the proposed classes as pleaded, therefore, the Court would have to determine issues going directly to the heart (the core elements) of Plaintiff's claims, such as, as explained *supra*, whether (1) HWA "placed or caused to be placed" any calls (*i.e.*, whether HWA is directly or vicariously liable for the calls); (2) the class member received an artificial or prerecorded voice call; and/or (3) the class member received "more than one" message within a 12-month period "promoting Defendant's goods or services." These are core elements of any TCPA artificial/prerecorded voice or DNC claim (respectively), and there is no objective way for this Court to determine who is a class member given this proposed class, as pleaded, without getting deep into the proverbial "weeds" of the merits and determining liability. *See, e.g.*, *Nichols*, 2025 WL 689721, at *4 (striking class as "fail-safe" and "defective as a matter of law" in DNC case when membership would "turn[] on whether a consumer received a telephone solicitation from" the defendant). Thus, the proposed definitions are classically fail-safe and should be stricken on this basis alone.

## 2.  Plaintiff's Claims Are Unique, Rendering His Claims Atypical and Making Him an Inadequate Class Representative.

For a class action to be certified, the named plaintiff must be able to demonstrate that their "claims and defenses are typical" and they can adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3), (4); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth

Circuit has articulated that the test for typicality is that the named plaintiff's claims arise from the "same or similar injury" as other members of the class and that "other members of the class have been injured by the same course of conduct." *Id.* at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). A class may not be certified "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (holding that plaintiff failed to satisfy typicality requirement of Rule 23(a)(2) where plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class").

The concern is that class members' interests will be negatively impacted if the named plaintiff's advocacy is consumed by issues relevant only to their specific claims. *See Hanon*, 976 F.2d at 508 ("We agree that a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'") (citation omitted); *see also Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."). Addressing the class allegations on the pleadings is appropriate where "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel.*, 457 U.S. at 160.

That this Plaintiff's claims are subject to numerous arguments and defenses that are unique to his individual claims and, therefore, this action will be spent litigating questions entirely unique to Plaintiff is clear even from the face of the Complaint:

**First**, the phone number in question does not appear to be linked to Plaintiff at all. One phone report shows that it may be a Verizon number, but is not linked to any person at all, including

Plaintiff. *See* Ruane Decl. ¶ 15 and Ex. J. The other phone report shows that it is affiliated with ***50 different U.S. businesses***, but no individual owners, again including Plaintiff. *Id.* It is unclear how Plaintiff could represent a class of individuals who allegedly received calls when the number at issue appears not to be associated with him at all.

**Second**, if the number does belong to Plaintiff, it appears to be a business number. *See* Ruane Decl. ¶ 13 and Ex. I. The TCPA DNC rules apply only to "residential telephone subscriber[s]." 47 C.F.R. § 64.1200(c)(2). Even if a cellular phone registered on the National DNC Registry is "presumptively" residential for purposes of the DNC analysis, that is a rebuttable presumption that can be overcome. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). Time spent litigating whether Plaintiff is a "residential telephone subscriber" within the meaning of the TCPA will detract from time that should be spent focusing on the class.

**Third**, Plaintiff is a serial TCPA litigant who seems to be exploiting the TCPA for profit and not for its intended purpose. Plaintiff alleges that he has been the subscriber of the odd subject phone number "for at least five years." ECF No. 1, ¶¶ 13–15. Yet he apparently filed no TCPA cases before October 29, 2024, and since then has filed an average of one TCPA case every five days. This prolific filing history is atypical even among serial TCPA litigants, and certainly cannot be typical of the class members Plaintiff seeks to represent. *Cf. Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 795 (W.D. Pa. 2016) (granting summary judgment for defendant in TCPA case, in part, because "Plaintiff is not a member of the class of persons that the TCPA was designed to protect").

**Fourth**, Plaintiff's distinctive (or, rather, extremely unusual) phone number that appears even on this Court's website makes him an atypical member of the class (if a class exists at all). *See* discussion at pp. 1–8, **Error! Bookmark not defined.**–9, *supra*. For one, while the number does

not appear to be linked to Plaintiff in the phone reports, it is linked to a host of other real and imaginary people on the internet—a realtor, a storage unit business, Betsy Beavers, Steve Supervisor, even John Q. Attorney. *See* Ruane Decl. ¶¶ 6–14 and Ex. A–I. As Plaintiff avers the subject calls here were intended for someone else, *see* ECF No. 1, ¶ 22, that means someone else may have used his number to get calls.  It could have been input into a web form by any number of the real people or businesses linked with the number, or indeed anyone at all using it as a "dummy" number. This seems especially likely given the number of Oregon institutions offering it as a "fake" number for illustrative purposes; ***it appears that no one, not even the District of Oregon, thinks this is a real number***. None of this is typical for other people's cellular phone numbers. It is not hard to imagine that someone (or more than one person) might have provided it to a caller when they did not want to use their real number, but it ***is*** hard to imagine that this has happened to any other class member.[12] Nothing about Plaintiff's claims are typical of those that could be brought by any other class member.

All this begs the question: Who would *want* such an odd, facially fake looking or business-related, number? It is hard to believe a phone carrier would *randomly* assign such a number to an individual user, and surely no one would want the obvious risk of receiving prank calls, "fake" number calls, wrong number calls and the like. But as the personal injury attorneys using 222-2222 understand, such numbers are valuable ***only as chosen business numbers*** (and the number, if it is associated with Plaintiff, does indeed appear to be listed as a business number, *see* Ruane Decl., ¶ 14 and Ex. I [the number listed by Plaintiff as his contact information as the Director of

---

[12] This is clear based on simple math. There are only 335 area codes in the U.S., and there are only 10 possible phone numbers with all digits repeated (000-0000, 111-1111, etc.). At the very most, there are 3,350 similar numbers in the entire United States. To meet Rule 23's requirement that the class be "so numerous that joinder of all members is impracticable," one would have to imagine that some significant percentage of these numbers are assigned to real people who were called by or on behalf of HWA. Fed. R. Civ. P. 23(a)(1). That is simply improbable.

Marketing for LeavenNoTrace.org].) This is markedly atypical for most people, who largely do not want their contact information published for anyone and everyone to see.  And if Plaintiff obtained the odd number just so that he could bring TCPA claims, which seems probable if not likely, he lacks standing to bring this case, either individually or in a representative capacity. *See* Stoops, 197 F.Supp.3d  at p. 795.

All told, it is abundantly clear that this litigation would focus on issues that only concern the named Plaintiff. Plaintiff is subject to unique defenses, rendering his claims atypical and undermining his ability to act as an adequate class representative. The interests of other putative members, whose claims (if any) do not involve such questions, would undoubtedly suffer with Plaintiff as their representative. Therefore, the class allegations should be stricken.

### 3.  **Plaintiff's Remaining Class Allegations Are Superfluous.**

Lastly, with Plaintiff's proposed class definition properly stricken, all remaining "class allegations" (*see, e.g.*, ECF No. 1 ¶¶ 43-70, including subparts) are superfluous and immaterial and, thus, should be stricken from the Complaint, as well. *See, e.g., Flores v. City of Calif. City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019) (striking "any reference to a class, Rule 23, or a class action" after dismissal of class claims); *Alan v. BrandRep, Inc.*, 2016 WL 10988679, at *3 (C.D. Cal. Nov. 28, 2016) (Rule "12(f) authorizes the Court to strike any redundant matter sua sponte.").

### V.  **CONCLUSION**

For these reasons, HWA respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6). Alternatively, HWA respectfully requests that the Court strike the class allegations from the Complaint pursuant to Rules 12(f) and/or 23.

Dated: October 22, 2025        Respectfully submitted,

By:*/s/ Patrice S. Ruane*
Jeffrey G. Bradford, OSB No. 133080
E-mail: jeff.bradford@tonkon.com
TONKON TORP LLP
1300 SW 5th Ave., Suite 2400
Portland, Oregon 97201
Telephone: (503) 802-5724

Patrice S. Ruane (admitted *pro hac vice*)
E-mail: pruane@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000

*Counsel for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,361 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this October 22, 2025.

*/s/ Patrice S. Ruane*